IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**JENNIFER GALLUZE**.

Plaintiff,

v.

CIVIL ACTION NO.   10-836

**WILLIAM R. MILLER** *individually and as*
*an Official Constable of the Commonwealth*
*of Pennsylvania.,*

Defendant.

## MEMORANDUM OPINION

**CONTI,** District Judge**.**

## Introduction

Pending before the court is a motion for summary judgment filed by defendant William

R. Miller ("Miller" or "defendant") (ECF No. 30) with respect to all claims asserted by plaintiff

Jennifer Galluze ("Galluze" or "plaintiff").   Plaintiff filed a cross-motion for partial summary

judgment with respect to her Fourth Amendment claims.   ECF No. 35.   Plaintiff asserts claims

for violations of her rights under the First, Fourth and Fourteenth Amendments to the United

States Constitution and a host of state law claims.   ECF No. 1.[1]   After considering the statements

of facts and the other submissions of the parties and the applicable standards, defendant's motion

for summary judgment will be granted with respect to the intentional and negligent infliction of

emotional distress claims and denied in all other respects and plaintiff's motion for partial

summary judgment will be denied.

---

[1] The complaint refers to two actions: "Federal Civil Rights Violations" and "Violations of State Law." ECF No. 1. Each action" includes several claims.   In the first "action," plaintiff asserted that defendant violated her federal rights: a) to be free from unreasonable seizures, b) to be free from use of excessive force, and c) to freedom of speech.   The second "action" includes state law claims for assault, battery, false imprisonment, and intentional and negligent infliction of emotional distress.   The complaint also referred to a state law claim for defamation. Plaintiff, however, never made factual allegations with respect to that claim, whether in the complaint or elsewhere.   The court must conclude, therefore, that plaintiff abandoned the defamation claim.

**Background**

This case stems from an incident that occurred on June 21, 2009, at the Brownsville Drive-In Theater, which is located in Fayette County, Pennsylvania.  ECF No. 32 at 1; ECF No. 41 at 1. Plaintiff was at the drive-in to pick up some kittens.  Id.  Tom Clark, Jr. ("Mr. Clark"), one of the owners of the drive-in asked plaintiff to leave the property.  Id.   There was some "screaming" and "yelling" between plaintiff and Mr. Clark.  Id.  Defendant, who was at the drive-in watching a movie with his family, approached the scene. ECF No. 32 at 2; ECF No. 41 at 2.  Plaintiff testified that defendant approached her and stated he was a constable.  Id.  During this interaction, defendant showed her his badge.  Id.  The evidence is conflicting about what happened next.

Defendant asked plaintiff to leave the premises. ECF No. 33-3 at 38, 45.   Plaintiff indicated that she intended to report the incident to the Humane Society.  Id.  at 38.  Plaintiff testified that, while she was attempting to leave the property, defendant, for no reason, hit her hand with his closed fist and proceeded to handcuff her.  Id.  After being handcuffed, plaintiff complained that the cuffs were too tight she could not breathe and called him a "wannabe." Id. at 46. "[W]hen [she] called him that he lifted up and pushed down on the handcuffs."  Id.  Plaintiff testified she never attempted to strike defendant.  Id.

Defendant testified that he saw plaintiff coming toward him with her hand in the air.  He thought she was about to strike him.  ECF No. 33-1 at 21-22.  Defendant felt threatened.  Id. at 23.  As her hand came forward, defendant side stepped and handcuffed her.  Defendant testified that he did so for his own safety and for the safety of plaintiff.  Id. at 22.  Defendant stated she was resisting the application of the handcuffs and he could not double lock the handcuffs.  Id.  While defendant acknowledged that plaintiff was complaining about the handcuffs being too

tight, he explained that it was only because she was struggling.  Id. at 24, 40.  Defendant did not

take the handcuffs off "due to the safety of the situation."  Id. at 41.

Mr. Charlie Perkins ("Mr. Perkins"), an eyewitness, testified that plaintiff was screaming

during the interaction with both Mr. Clark and defendant. EFC No. 33-2 at 39.  He also testified

that plaintiff looked "outraged" and that "she was going to hit him, him being [defendant]."  Id.

at 41.  Next, defendant handcuffed her. Id.  at 42.

As a result of this incident, plaintiff "was charged and convicted of one summary offense

of disorderly conduct and to pay a $25.00 dollar fine." ECF No. 49 at 4.

## Standard of Review

A motion for summary judgment is governed by Federal Rule of Civil Procedure 56,

which provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary
> Judgment.**  A party may move for summary judgment, identifying
> each claim or defense – or the part of each claim or defense – on
> which summary judgment is sought.   The court shall grant
> summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to
> judgment as a matter of law.  The court should state on the record
> the reasons for granting or denying the motion.
>
> . . .
>
> **(c) Procedures.**
>
> **(1)** *Supporting Factual Positions*.  A party asserting that a fact
> cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory answers,
> or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1).

The Court of Appeals for the Third Circuit instructed in <u>Marten v. Godwin</u>, 499 F.3d 290 (3d Cir. 2007), that Rule 56 of the Federal Rules of Civil Procedure:

> "[M]andates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

<u>Marten</u>, 499 F.3d at 295 (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also Doe v. Abington Friends Sch.</u>, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing <u>Anderson</u>, 477 U.S. at 248; <u>Celotex Corp.</u>, 477 U.S. at 322-23)).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party.  <u>See Woodside v. Sch. Dist. of Phila. Bd. of Educ.</u>, 248 F.3d

4

129, 130 (3d Cir. 2001); <u>Doe v. Cnty. of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001); <u>Heller v.</u>

<u>Shaw Indus., Inc.</u>, 167 F.3d 146, 151 (3d Cir. 1999).   A court must not engage in credibility

determinations at the summary judgment stage.   <u>See</u> <u>Simpson v. Kay Jewelers, Div. of Sterling,</u>

<u>Inc.</u>, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## <u>Discussion</u>

### I.    Defendant's motion for summary judgment

A.    Plaintiff brought three claims against defendant pursuant to 42 U.S.C. § 1983:[2] (i) illegal

arrest, (ii) excessive force, and (iii) First Amendment retaliation.

> To successfully establish a claim under § 1983, a plaintiff must demonstrate that a
> person or entity intentionally deprived her of a federally protected right.   <u>See</u> <u>Bd.</u>
> <u>of the Cnty. Comm'rs of Bryant Cnty. v. Brown</u>, 520 U.S. 397, 404 (1997).   A
> plaintiff is required to establish two prongs to prevail on a claim under § 1983: (1)
> deprivation of a federal right and (2) "that the person who has deprived [her] of
> that right acted under color of state or territorial law."   <u>See</u> <u>Gomez v. Toledo</u>, 446
> U.S. 635, 640 (1980).

<u>Whiting v. Bonazza</u>, No. 09-cv-1113, 2011 WL 500797, at *4 (W.D. Pa. Feb. 10, 2011).

> Each of the asserted federal claims will be addressed.

(i)    <u>Illegal arrest claim</u>

Plaintiff argued that she was unlawfully arrested by defendant in violation of the Fourth

Amendment because he, as a constable, did not have the authority to do so and, in any event, did

not have probable cause to arrest her.

---

[2] Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Defendant argued that he, as a constable, had the authority to arrest her because she was in the process of committing an aggravated assault against him, a felony offense under Pennsylvania law.  In support, defendant relied on <u>Commonwealth v. Taylor</u>, 677 A.2d 846 (Pa. Super. Ct. 1996), for the proposition that "constables possess the common law powers to conduct warrantless arrests for felonies and breaches of the peace. Since those powers have not been abrogated by our statutory law, they are retained by the constables of this Commonwealth." <u>Id.</u> at 852.  He also cited 44 PA. CONS. STAT. § 7158 (relating to the power of arrest of a constable of a borough).[3] Defendant, in the alternative, argued that even in the absence of his authority as a constable, he, as a private citizen, had the power to arrest plaintiff because she was about to commit a felony in his presence.  ECF No. 33 at 4-5.  Defendant asserted that plaintiff's conduct gave defendant probable cause to arrest her and that no excessive force was used to arrest her. <u>Id</u>. at 5-13.

In response, plaintiff argued that defendant's motion for summary judgment should be denied because she satisfied both elements of a § 1983 claim.  Specifically, plaintiff argued that defendant was acting under color of state law and that, "[b]ased upon the undisputed material facts," defendant's conduct deprived her of rights protected under the Constitution. ECF No. 40 at 3.

---

[3] Section 7158 provides as follows:

**§ 7158. Arrest in boroughs**

In addition to any other powers granted under law, a constable of a borough shall, without warrant and upon view, arrest and commit for hearing any person who:

(1) Is guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness.

(2) May be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens.

(3) Violates any ordinance of the borough for which a fine or penalty is imposed.

44 PA. CONS. STAT. § 7158.

According to plaintiff, defendant's conduct was unlawful because defendant did not have the authority to arrest plaintiff.  While plaintiff did not dispute the validity of Taylor, she argued that Taylor is not applicable here because she was charged and convicted of a summary offense (disorderly conduct), not a felony.  Regarding section 7158, plaintiff argued that it is not applicable here because defendant was not a constable of any borough, but only a constable for the South Strabane Township, Washington County, and the offense occurred in Redstone Township, Fayette County.[4]

In his reply defendant argued that "Plaintiff assumes without offering analysis that Defendant was acting under color of state law."  (ECF No. 44 at 1.)  Defendant noted:

> There was no attempt by Constable Miller to do anything other than to assist the property owner in having her leave the premises.  There was no threat of citation or arrest, no brandishing of a weapon or even his handcuffs, nor any other actions on his part that could qualify as acting under color of state.  . . . As the victim of an aggravated assault, based on his common law rights as a citizen and in self-defense, [defendant] placed [plaintiff] into handcuffs for that violation and for his own protection.

(ECF No. 44 at 1-2.)[5]   Defendant's argument that he was not acting under color of state law is untenable and no reasonable jury could reach that conclusion.   The court of appeals in Barna v. City of Perth Amboy, 42 F.3d 809 (3d Cir. 1994), stated:

---

[4] The court agrees with plaintiff that section 7158 is not applicable to the instant matter as defendant is not a constable of a borough.  See Commonwealth v. Roose, 690 A.2d 268, 271 (Pa. Super. Ct. 1997) (relying on 13 PA. CONS. STAT. § 45, now 44 PA. CONS. STAT. § 7158). It should be noted, however, that section 7158 became effective on December 8, 2009.  At the time of the relevant facts (June 2009), 13 PA. CONS. STAT. § 45 controlled the matter, not section 7158.  For purposes of the issue raised here, however, 13 PA. CONS. STAT. § 45 and 44 PA. CONS. STAT. § 7158 are essentially identical. Section 45 provides as follows:

> The policeman and constables of the several boroughs of this commonwealth, in addition to the powers already conferred upon them, shall and may, without warrant and upon view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or violating any ordinances of said borough, for the violation of which a fine or penalty is imposed.

13 PA. CONS. STAT. § 45.

[5] See also ECF No. 39 at 1-2 (same).

It is [also] clear that under 'color' of law means under 'pretense' of law." [*Screws v. United States,* 325 U.S. 91, 111 (1945)]. Thus, one who is without actual authority, but who purports to act according to official power, may also act under color of state law. In *Griffin v. Maryland,* the Supreme Court held that a deputy sheriff employed by a private park operator acted under color of state law when he ordered the plaintiff to leave the park, escorted him off the premises, and arrested him for criminal trespass. *Griffin v. Maryland,* 378 U.S. 130, 135, 84 S.Ct. 1770, 1772–73, 12 L.Ed. 2d 754 (1964) (analyzing state action necessary for a claim under the Equal Protection Clause of the Fourteenth Amendment). While the deputy sheriff was in actuality acting as a private security guard as agent of the park operator rather than as agent of the state, he "wore a sheriff's badge and consistently identified himself as a deputy sheriff rather than as an employee of the park," and consequently "purported to exercise the authority of a deputy sheriff." *Id.* at 135, 84 S.Ct. at 1772. The Court concluded that the privately employed deputy sheriff had been acting as a state actor, stating:

> If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity.

*Id.* In this same vein, off-duty police officers who purport to exercise official authority will generally be found to have acted under color of state law. Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations. *See, e.g., Rivera v. La Porte,* 896 F.2d 691, 696 (2d Cir.1990) (identification as a peace officer, arrest of plaintiff, and use of police car); *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir.1984) (flashing of police badge and identification as police officer working as security guard), *vacated on other grounds,* 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *adhered to on remand,* 796 F.2d 1307 (10th Cir.), *cert. denied,* 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975), *cert. dismissed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976) (intervening in barroom brawl).

On the other hand, a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law. *See Delcambre v. Delcambre,* 635 F.2d 407, 408 (5th Cir.1981) (holding that alleged assault by on-duty police chief at police station did not occur under color of state law because altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff); *see also D.T. v. Independent School Dist. No. 16,* 894 F.2d 1176 (10th Cir.) (finding sexual molestation of students by public school teacher/coach that occurred on an excursion unconnected to school activities during school vacation period when teacher was not employed by the

school district did not occur under color of state law), *cert. denied,* 498 U.S. 879, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990). While a police-officer's use of a state-issue weapon in the pursuit of private activities will have "furthered" the § 1983 violation in a literal sense, courts generally require additional indicia of state authority to conclude that the officer acted under color of state law. *Compare Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir.1982) (holding that officer who used police handgun to shoot his wife and then commit suicide did not act under color of state law even though he was required to carry the police gun at all times) *with Stengel v. Belcher,* 522 F.2d at 441 (finding evidence supported determination of "under color" where off-duty officer intervened in barroom brawl as required by relevant police department regulations); *United States v. Tarpley,* 945 F.2d 806, 809 (5th Cir.1991) (finding requirement under color of state law met where off-duty deputy sheriff assaulted wife's alleged ex-lover in a private vendetta but identified self as police officer, used service revolver, and intimated that he could use police authority to get away with the paramour's murder), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992).

Id. at 816-17 (footnote omitted).

Under the circumstances of the case, it is undisputed that defendant intervened in the dispute between the owner of the drive-in and plaintiff, flashed his badge, identified himself as constable, and placed the plaintiff under arrest.  As such, a reasonable jury could find defendant acted under color of state law.[6]

Regarding the authority of a constable to make a warrantless arrest, the only issues raised by plaintiff are:  1) defendant lacked authority because she was not charged with or convicted of a felony offense;  and  2) defendant did not have probable cause to believe she was about to commit a felony.

Despite the repeated attempts by plaintiff to emphasize that defendant did not have the authority to arrest her for a summary offense, the inquiry whether the arrest was supported by

---

[6] See Abbott v. Latshaw, 164 F.3d 141 (3d Cir. 1998):

> In Pennsylvania, constables are elected public officials with prescribed duties and liabilities, *see* 13 Pa. Cons. Stat. Ann. §§ 1, 41, 45 (1998) [repealed, see now 44 PA.C.S.A. §§ 7111, 7112, 7153, and 7158]. . . .  Diehl[, a county constable,] admits that he acted as a constable, and identified himself as such to [plaintiff]. The other [three] officers arrived on the scene in response to Diehl's call for assistance, and were on duty. All four law enforcement officers were clearly state actors.

Id. at 146.

probable cause must be determined on the facts available to the officer at the moment of arrest

and it is irrelevant what offense she was ultimately charged with or convicted of.  The court of

appeals in <u>Wright v. City of Philadelphia</u>, 409 F.3d 595 (3d Cir. 2005), stated:

> An arrest was made with probable cause if "at the moment the arrest was made ...
> the facts and circumstances within [the officers'] knowledge and of which they
> had reasonably trustworthy information were sufficient to warrant a prudent man
> in believing that [the suspect] had committed or was committing an offense."
> *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citations
> omitted). In other words, the constitutional validity of the arrest does not depend
> on whether the suspect actually committed any crime. *Johnson v. Campbell,* 332
> F.3d 199, 211 (3d Cir. 2003). Importantly for this case, it is irrelevant to the
> probable cause analysis what crime a suspect is eventually charged with, *Barna v.
> City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994) ("Probable cause need only
> exist as to any offense that could be charged under the circumstances."), or
> whether a person is later acquitted of the crime for which she or he was arrested,
> *DeFillippo,* 443 U.S. at 36, 99 S.Ct. 2627; *see also Devenpeck,* 125 S.Ct. at 594
> ("The rule that the offense establishing probable cause must be 'closely related'
> to, and based on the same conduct as, the offense identified by the arresting
> officer at the time of arrest is inconsistent with [ ] precedent.").

<u>Id.</u> at 602.

> Similarly, in <u>Barna</u>, the court of appeals held:

> The test for an arrest without probable cause is an objective one, based on "the
> facts available to the officers *at the moment of arrest*." *Beck v. Ohio,* 379 U.S. 89,
> 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); *Edwards v. City of Philadelphia,*
> 860 F.2d 568, 571 n. 2 (3d Cir.1988). Evidence that may prove insufficient to
> establish guilt at trial may still be sufficient to find the arrest occurred within the
> bounds of the law. *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4
> L.Ed.2d 134 (1959). As long as the officers had some reasonable basis to believe
> Mr. Barna had committed a crime, the arrest is justified as being based on
> probable cause. *Probable cause need only exist as to any offense that could be
> charged under the circumstances. Edwards v. City of Philadelphia,* 860 F.2d at
> 575–76.

<u>Barna</u>, 42 F.3d at 819 (emphasis added).

Thus, the relevant time for purposes of the probable cause analysis is the time of the

arrest.  Plaintiff's argument to the contrary is without merit.  Here, defendant testified that he

arrested her because she was about to strike him.  Once again, however, the evidence relating to

the events leading to the arrest, including the severity of the bodily injury attempted, are in dispute. As noted, at this stage, the court cannot make credibility determinations and must view the facts in the most light most favorable to the nonmoving party. Applying this standard, the motion filed by defendant for summary judgment cannot be granted.

Finally, plaintiff argued that no felony could have been involved because the state statute relating to an aggravated assault was no applicable. She asserted that 18 PA. CONS. STAT. § 2702 "only protects the law enforcement officer, constable, or other enumerated person who is acting in the performance of duty. Defendant had no authority or jurisdiction at the time of the accident and was not acting pursuant to any lawful duty." (ECF No. 40 at 9.)

Section 2702 of the Pennsylvania Crimes Code, in relevant part, provides as follows:

**(a) Offense defined.--**A person is guilty of aggravated assault if he:

. . .

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;

. . .

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury; or

. . .

**(b) Grading.--**Aggravated assault under subsection (a)(1) and (2) is a felony of the first degree. Aggravated assault under subsection (a)(3), (4), (5), (6) and (7) is a felony of the second degree.

**(c) Officers, employees, etc., enumerated.--**The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:

> . . .
>
> (24) A constable
>
> . . . .

18 PA. CONS. STAT. § 2702.

As noted above, plaintiff argued that defendant had no authority or jurisdiction at the time of the accident and was not acting pursuant to any lawful duty. Whether defendant had the authority to arrest under the circumstances (*i.e.*, the legality of the arrest) is irrelevant to the issue whether he was acting in the performance of his duty. See, e.g., Commonwealth v. Schwenk, 777 A.2d 1149 (Pa. Super. Ct. 2001);[7] In re Barry W., 621 A.2d 669 (Pa. Super. Ct. 1993);[8] Commonwealth v. Novak, 564 A.2d 988 (Pa. Super. Ct. 1989).[9] Here, "in the performance of

---

[7] In Schwenk, the superior court held: "The fact that a state police officer is off-duty does not mean that the trooper's power to conduct official police business automatically ceases" (citing Commonwealth v. Hurzt, 532 A.2d 865 (Pa. Super. Ct. 1987). The Schwenk court also considered Commonwealth v. Eshelman, 383 A.2d 838 (Pa. 1978). The Superior Court summarized the holding in Eshelman as follows:

> In *Eshelman,* a non-uniformed, off-duty police officer discovered several packages containing marijuana in an old car belonging to the defendant. The officer was outside of his jurisdiction at the time. The Pennsylvania Supreme Court held that although the officer was without authority to do so, he was acting as a police officer, based on his training and experience, and on his intent to turn over the packages to his superior on the police force for investigation, when he removed the packages. [id. at 842] Thus, under the holding of *Eshelman,* a police officer may act in the performance of his duties even if he is not in uniform, and is not officially "on-duty" at the time of an arrest.

Schwenk, 777 A.2d at 1153.
[8] In In re Barry W., the superior court held:

> Unlike Section 5104 of the Crimes Code, the offense of aggravated assault, 18 Pa.C.S. § 2702(a)(3), does not require that the assault occur during an attempt to effectuate a *lawful arrest.* In 1986, the legislature amended 18 Pa.C.S. § 2702(a)(3) and substituted the words "in the performance of duty" for the words "making or attempting to make a lawful arrest". This change broadened the scope of the statute, evidencing the concern of the legislature with protecting police officers from bodily injury under any circumstances.

In re Barry W., 621 A.2d at 680 (emphasis in original).
[9] In Novak, the superior court held:

duty" requires that defendant was acting as a constable at the relevant times. As noted above,

defendant was acting as a constable as he flashed his badge, announced he was a constable and

handcuffed plaintiff.  Importantly, the mere fact that defendant might have violated state law

(acting beyond the scope of his jurisdiction or making an otherwise illegal arrest), does not

necessarily establish a Fourth Amendment violation.  United States v. Laville, 480 F.3d 187,

191-92 (3d Cir. 2007) (holding, *inter alia*, that the reasonableness of an arrest under the Fourth

Amendment does not depend on whether it was lawful under state law and that the validity of an

arrest under state law is at most a factor that a court may consider in assessing the broader

question of probable cause).[10]  In any event, a jury will need to assess the evidence relating to the

events leading to the arrest and the arrest itself.  There are genuine issues of material fact in

---

Appellant argues that a jury could have found that Officer Brackney had made an unlawful arrest and that under such circumstances appellant's offense would have been simple assault. We reject this argument. Under the 1986 amendment, a lawful arrest is not an essential element to a violation of 18 Pa.C.S. § 2702(a)(3). All that is required is that the officer be "in the performance of duty." The police officer in the instant case was in uniform and in the performance of her duties at the time of appellant's assault. There was no contention otherwise. Under the circumstances of this case, therefore, the trial court was not required to instruct the jury on simple assault.

Novak, 564 A.2d at 990.

[10] See Hopper v. Rinaldi, No. 07-5323, 2008 WL 558049 (D. N.J. Feb. 29, 2008):

The fact that law enforcement officials acted beyond the scope of their geographic authority may amount to a violation of state law but does not violate the Fourth Amendment. *See, e.g., Guest v. Leis,* 255 F.3d 325, 334 (6th Cir.2001) (search and seizure by officers acting outside their jurisdiction did not violate the Fourth Amendment); *United States v. Mikulski,* 317 F.3d 1228, 1233 (10th Cir. 2003) (officers' "apparent violation of state law" in making an arrest outside their jurisdiction did not amount to a federal violation); *Pasiewicz v. Lake County Forest Preserve District,* 270 F.3d 520, 526-[27] (7th Cir. 2001) (although a "blatant disregard of state law and the chain of command could weigh on the scales of reasonableness," the fact of the officers' extraterritorial arrest in violation of state law did not violate the Fourth Amendment); *Abbott v. City of Crocker,* 30 F.3d 994, 998 (8th Cir. 1994) (same); *Voicenet Communs., Inc. v. Corbett,* [No. 04-1318, 2006 WL 2506318 at *10 (E.D. Pa. Aug. 30, 2006)] (same).

Hence, even if there were a hypothetical state-law provision expressly forbidding police officers to act outside their geographic jurisdiction, the police officers action in violation of such provision would not violate the Fourth Amendment, since a violation of state law is not a federal constitutional violation. *See, e.g., United States v. Baker,* 16 F.3d 854, 856 n. 1 (8th Cir. 1994) ("A police violation of state law does not establish a Fourth Amendment violation").

Id. at *2-3.

dispute and the court cannot grant summary judgment in defendant's favor with respect to this claim.

(ii) Excessive force claim

Plaintiff argued that defendant never loosened the handcuffs and that the handcuffs were tight and would have been tight for ten or fifteen minutes until the police arrived.  ECF No. 40 at 13.  In her testimony, Plaintiff stated that the handcuffs were so tight she could not breathe. Defendant, in turn, argued that there is no evidence of excessive force and the handcuffing was in self-defense to prevent an assault that was occurring and future assaults.  ECF No. 44 at 4.

Excessive force claims (applicable against the States by the Due Process Clause of the Fourteenth Amendment, and enforced under § 1983) are analyzed under the Fourth Amendment. Rodriguez v. Passaic, 730 F. Supp. 1314, 1320 (D. N.J. 1990). "[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigation stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." In re City of Phila. Litig., 49 F.3d 945, 962 (3d Cir. 1995) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

A claim for excessive force must involve a "seizure" that was unreasonable. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). "[A] suspect is not seized until he submits to the police's show of authority or the police subject him to some degree of physical force."  Abraham v. Raso, 183 F.3d 279, 291 (3d Cir. 1999). The reasonableness standard under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396. "'Not every push or shove, even if it may seem unnecessary in

the peace of a judge's chambers,' violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396

(quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).   Other factors to consider

"include 'the duration of the [officer's] action, whether the action takes place in the context of

effecting an arrest, the possibility that the suspect may be armed, and the number of persons with

whom the police officers must contend at one time.'" <u>Couden v. Duffy</u>, 446 F.3d 483, 497 (3d

Cir. 2006) (quoting <u>Sharrar v. Felsing</u>, 128 F.3d 810, 822 (3d Cir.1997)).

The preliminary issue to be decided here is whether a constable is a police officer for

purposes of this claim.   While there is some authority that could be construed as opposed to such

a conclusion (see <u>Roose</u>, 690 A.2d at 242-43, which relied, in part, on the definition of "police

officer" in the Pennsylvania Crimes Code[11]), the majority of authorities that this court could find

on this matter suggest otherwise.

In <u>Taylor</u>, the Superior Court of Pennsylvania noted:

> The Supreme Court's statement that "a constable is a peace officer" was merely
> express recognition of a well-settled legal principle. *See e.g.,* Black's Law
> Dictionary (5th ed. 1979) (defining "peace officers" to include "sheriffs and their
> deputies, constables ... and other officers whose duty it is to enforce the peace."),
> and 6A C.J.S. Arrest, § 17 ("Justices, sheriffs, coroners, constables and watchmen
> are recognized peace officers at common law."). Lastly, 16 P.S. § 1216, Peace
> officers; powers and duties, expressly applies to constables.  Moreover, following
> its statement that "a constable is a peace officer", the Court inserted a footnote
> which provides, "[t]he constable is a police officer." *In Re Act 147 of 1990,* 528
> Pa. 460, 471, 598 A.2d 985, 990 (1991). Instantly, the Commonwealth asserts that
> this statement constitutes Supreme Court recognition that constables possess "the
> same authorities and duties" as police officers under all circumstances.
> (Appellant's brief at 10.) We flatly reject this claim. Specifically, when read in the
> context in which it was uttered, the Court's statement indicates that the powers of
> constables and police officers are coextensive in matters relating to "conservation
> of the peace." *Id.* Further, as the remainder of the Court's Opinion indicates, its
> notation that "[t]he constable is a police officer" was intended as further support

---

[11] The Pennsylvania Crimes Code, in relevant part, provides: "'Police officer.' The term shall include the sheriff of a county of the second class and deputy sheriffs of a county of the second class who have successfully completed the requirements under the act of June 18, 1974 (P.L. 359, No. 120), referred to as the Municipal Police Education and Training Law." 18 PA. CONS. STAT. § 103.

for the Court's ultimate conclusion that "a constable belongs analytically to the
executive branch of government." *Id.* Therefore, since *Act 147* did not involve the
relative arrest powers of constables and police officers, the Court's statement
cannot be taken as a blanket endorsement of constable powers coextensive with
those of police officers under all circumstances. Finally, the Court's finding that
constables are independent contractors, as quoted above, clearly indicates that the
Court did not consider constables and police officers analogous for all purposes,
since Pennsylvania law has never characterized police officers as independent
contractors.

Taylor, 677 A.2d at 848.

In Davis v. Borough, 669 F. Supp. 2d 532 (E.D. Pa. 2009), the district court noted:

Constable Connor, in arguing that constables serving warrants are merely "arm [s]
of the judicial power," (Def.'s Mot. to Dismiss 5), appears to imply that
Pennsylvania State constables are not the equivalent of police officers. However,
state law grants constables, as well as police officers, the power to arrest "all
persons guilty of a breach of the peace ... without warrant and upon view." 13 Pa.
Con. Stat. § 45. The fact that constables are authorized "to initiate discretionary
acts depriving others of their rights," *Waits* [*v. McGowan*, 516 F.2d 203, 207 (3d.
1975)], argues in favor of considering constables as equivalent to police officers
in the context of civil liability immunity.

Id. at 535.

Similarly, the court of appeals in County of Allegheny v. Berg, 219 F.3d 261 (3d Cir.

2000), and Abbott v. Latshaw, 164 F.3d 141 (3d Cir. 1998), and the district court in Maloney v.

City of Reading, 04-cv-5318, 2006 WL 305440 (E.D. Pa. Feb. 8, 2006), treated constables as

police officers for purpose of § 1983 claims.  Finally, Pennsylvania Rule of Criminal Procedure

103 defines a police officer as "any person who is by law given the power to arrest when acting

within the scope of the person's employment."  Pa. R. Crim. P. 103.

The court concludes that in the context of those cases a constable is a police officer.  The

court next must determine whether the evidence adduced is sufficient to withstand a motion for

summary judgment.  In making this determination, a court must view the facts in the light most

favorable to the nonmoving party, must draw all reasonable inferences, and resolve all doubts in

favor of the nonmoving party, and must not engage in credibility determinations.  In light of this standard and the contradictory evidence present in the record (as noted, plaintiff adduced evidence that the handcuffs were tight and that she could not breathe; defendant, on the other hand, adduced evidence that plaintiff experienced pain only because she was struggling and he could not take the handcuffs off because of safety issues) the court must deny defendant's motion for summary judgment with respect to this claim.

(iii)  <u>First Amendment retaliation claim</u>

The Court of Appeals for the Third Circuit in <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274 (3d. Cir. 2004), held:  "In general, constitutional retaliation claims are analyzed under a three-part test. Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation."  <u>Id.</u> at 282.

With respect to the First Amendment retaliation claim, plaintiff argued that she was engaged in protected speech when defendant retaliated against her by "handcuffing and further assaulting" plaintiff.  (ECF No. 40 at 14.)   Plaintiff asserted her stating an intention to report the incident to the Humane Society and complaining about the handcuffs being too tight are instances of protected speech.

In response, defendant argued that plaintiff failed to adduce sufficient evidence to establish a violation of her First Amendment rights because her comments related to private issues – not public ones – and as such are not protected under the First Amendment.  In support, defendant cited <u>Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc</u>., 472 U.S. 749 (1985), for the proposition that "speech on matters of public concern . . . is at the heart of First Amendment protection."  ECF No. 44 at 6.

This court disagrees. Plaintiff does not need to show that the speech in issue must be of matters of public concern to be protected under the First Amendment.  In Eichenlaub, the court of appeals held:

> The District Court relied in part on our opinion in *Anderson* [*v. Davilla*, 125 F.3d 148 (3d Cir. 1997] to hold that "plaintiff must show that speech is a matter of public concern in order to receive First Amendment protection." App. A17 (quoting *Anderson,* 125 F.3d at 162). This reading of our case law, however, is overbroad. Our decision in *Anderson* -and all the other decisions relied upon in the District Court or by the parties-provide only that a "public concern" requirement applies when a claim of First Amendment retaliation is brought by a public employee against his or her government employer. *Anderson,* 125 F.3d at 162. The speech on public concerns requirement embodied in these decisions has not been applied, however, when non-employees complain that government has retaliated against them *as citizens* for their speech. To expand this public concern limitation into the broader context of all citizen speech would wrench it from its original rationale and curtail a significant body of free expression that has traditionally been fully protected under the First Amendment.

Id. at 282 (emphasis in original).

Thus, the speech in this case, even if it was about matters of private concern, could be entitled to First Amendment protection.  The evidence of record is in conflict with respect to whether the alleged "protected activity" caused the retaliation. Accordingly, defendant's motion for summary judgment must be denied with respect to this claim.

(B)   State law claims

   (i)   Assault and battery claims

Defendant argued that he did not commit assault and battery against plaintiff and that any force he used against her was justified under 18 PA. CONS. STAT. § 508(1).[12]  Plaintiff asserted that section 508 is not applicable here because the arrest was unlawful.

---

[12] Section 508, in relevant part, provides as follows:

> A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest

The Pennsylvania Supreme Court in <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289 (Pa. 1994), stated:

> "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (1950). (Citation omitted.)   A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

<u>Id.</u> at 293.

Here, as discussed above, there are genuine issues of material fact concerning what occurred prior to the arrest and the arrest itself.  Accordingly, defendant's motion for summary judgment must be denied with respect to this claim.

(ii)   <u>False imprisonment claim</u>

Plaintiff argued that she adduced sufficient evidence to withstand a motion for summary judgment with respect to the claim of false imprisonment.  Specifically, plaintiff argued that she was unlawfully handcuffed and prevented from leaving.

> A claim for false imprisonment requires a plaintiff to provide that (1) defendant intended to confine the plaintiff, (2) defendant performed an action that directly or indirectly produced such confinement, and (3) plaintiff was either conscious of or harmed by the conduct. *Gagliardi v. Lynn,* 446 Pa. 144, 148 n. 2, 285 A.2d 109 (1971) (quoting Restatement (Second) of Torts § 35 (1965)); *Pennoyer v. Marriott Hotel Servs., Inc.,* 324 F.Supp.2d 614, 619–20 (E.D. Pa. 2004). In the context of an arrest, the plaintiff may establish liability for false imprisonment by proving either that the arrest occurred without probable cause or that the person effecting the arrest lacked a privilege to do so. *Gagliardi,* 285 A.2d at 111 n. 3; *Cerami v. Blake,* No. Civ.A. 92–4358, 1993 WL 21011, at *6 (E.D. Pa. 1993). Hence, a "false arrest" is an alternative means of establishing liability for false imprisonment but "is not itself a tort in the sense of being an

---

and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. . . .

18 Pa. Cons. Stat. § 508(a)(1).

independent source of liability." *Cerami,* 1993 WL 21011, at *6 (quoting *Gagliardi,* 285 A.2d at 111).

Police officers are privileged to commit the tort of false imprisonment during an arrest if the officer reasonably believes that the suspect placed under arrest has committed a crime. Restatement 2D Torts § 121; *see also Cambist Films, Inc. v. Duggan,* 475 F.2d 887, 889 (3d Cir. 1973) (applying § 121 of the Restatement under Pennsylvania common law); *Belcher v. United States,* 511 F. Supp. 476, 483–84 (E.D. Pa. 1981). Later exculpation of the suspect does not vitiate the privilege provided that the officer reasonably believed that the individual had committed a crime at the time the arrest occurred. Restatement 2D Torts § 121. The officer is protected "in every case where he acts under a reasonable mistake as to the existence of facts which ... justify an arrest." *Id.* § 121 cmt. i; *Cambist Films,* 475 F.2d at 889.

Dull v. West Manchester Twp. Police Dep't, 604 F. Supp.2d 739, 754-55 (M.D.Pa. 2009).

Because there are genuine issues of material fact in dispute concerning whether plaintiff's arrest was based upon probable cause, this court cannot grant summary judgment in favor of defendant with respect to plaintiff's false imprisonment claim.

(iii)    Intentional infliction of emotional distress claim

Plaintiff argued defendant's motion for summary judgment with respect to her intentional infliction of emotional distress claim should be denied because she sustained emotional injuries from the incident.  (ECF No. 40 (citing ECF No. 41 at 7, 9).)   Defendant rebutted saying there was no evidence presented to show that the distress was "severe."   (ECF No. 33 at 15.)  The court agrees.

In order to sustain a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must establish that: (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant emotional distress was severe. *Bruffett v. Warner Commc'ns, Inc.,* 692 F.2d 910, 914 (3d Cir. 1982). For an IIED claim to survive, the court must be satisfied that the defendant's alleged misconduct is so extreme and outrageous that it "go[es] beyond all possible bounds of decency, and ... [is] regarded as atrocious, and utterly intolerable in a civilized society." *Wilkes v. State Farm Ins. Cos.,* No. 1:05–CV–586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005).  . . . In the instant matter, the allegedly improper arrests performed by Conway, Figge, Bixler, and Haines are not sufficiently extreme and outrageous to support a claim for IIED. At most, defendants miscalculated the propriety of their law enforcement activities.

Dull, 604 F. Supp.2d at 756-57.

Here, even if the court were to find that defendant's conduct met the first and third elements of the claim, no reasonable jury could render a verdict in favor of plaintiff on this claim.  There is no evidence of record regarding the second and fourth elements.  Defendant's motion for summary judgment concerning the intentional infliction of emotional distress claim must be is granted.

> (ii)    Negligent infliction of emotion distress claim

With respect to the negligent infliction of emotional distress claim, plaintiff argued that the motion for summary judgment should be denied because she suffered "emotional injuries." (ECF No. 40 at 15.)  Emotional injuries, however, are not enough.

The Superior Court of Pennsylvania in Doe v. Philadelphia Community Health Alternatives AIDS Task Force, 745 A.2d 25 (Pa. Super. Ct. 2000), noted:

> In Pennsylvania, the cause of action for negligent infliction of emotional distress has been limited by court decisions. In order to recover, the Plaintiff must prove one of four elements: (1) that the Defendant had a contractual or fiduciary duty toward him; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative. In all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer *immediate* and *substantial* physical harm.

Id. at 27-8 (emphasis in original).

Here, plaintiff relies on the second theory, *i.e.*, plaintiff suffered a physical impact. Plaintiff, however, failed to demonstrate the requisite physical harm from the emotional suffering.   In her testimony, plaintiff reported only being "emotionally scarred" and "violated" (ECF No. 41 at 7, 9), but did not adduce evidence of the requisite physical manifestation of the alleged emotional suffering.  Thus, the claim fails.  The superior court as a matter of law in

<u>Toney v. Chester County Hospital</u>, 961 A.2d 192 (Pa. Super. Ct. 2008), held:  "If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."  <u>Id.</u> at 199 (quoting RESTATEMENT (SECOND) OF TORTS § 436A).   Plaintiff's negligent infliction of emotional distress claim fails not because she failed to prove a physical impact; rather, she failed to adduce evidence of an immediate and substantial physical injury.  <u>See</u> <u>Cimildoro v. Metro. Prop. and Cas. Ins. Co.</u>, No. 09-cv-1907, 2010 WL 891838, at *5 (E.D. Pa. Mar. 8, 2010).   No reasonable jury could render a verdict in plaintiff's favor on this claim and defendant's motion for summary judgment with respect to the negligent infliction of emotional distress claim must be granted.

## II.      Plaintiff's motion for summary judgment

Plaintiff argued that "[e]xcepting a warrantless arrest for a felony, Constables do not have the power to arrest without a warrant in Pennsylvania unless specifically given that power of the statute."  (ECF No. 35 at 2.)  Plaintiff added: "There is no statute which granted the Defendant . . . the authority to arrest the Plaintiff for summary offense as he did on June 22, 2009," and concluded "based on the undisputed material facts, Plaintiff is entitled to summary judgment on the specific issue of the violation of her fourth amendment rights."  <u>Id.</u>

The court disagrees. As discussed above, the underlying facts are far from being "undisputed" and the caselaw does not support her position.   A jury will need to determine whether defendant had probable cause to believe plaintiff engaged in aggravated assault against him and whether defendant used excessive force against plaintiff.

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment (ECF N. 30) will be granted with respect to the intentional and negligent infliction of emotional distress claims and will be denied in all other respects and plaintiff's motion for partial summary judgment (ECF No. 35) will be denied.

An appropriate order will follow.


Dated: March 22, 2012                                        By the court:


                                                             /s/ Joy Flowers Conti
                                                             Joy Flowers Conti
                                                             United States District Judge